# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSHUA M. COOKSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:10-cv-00256-JAW |
| COMMISIONER, MAINE DEPARTMENT OF CORRECTIONS | ) ) ) ) | |
| Defendant | ) | |

## RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT

Joshua Cookson, an inmate at the Maine State Prison (MSP), is pursuing a civil action asserting that his rights under the First Amendment free exercise clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA) have been violated. Cookson practices 'Satanism' and describes this as his religion. He complains that he is forbidden from observing his religion because of restrictions placed on the practice by the <u>former</u> Commissioner of the Maine Department of Corrections (MDOC), Martin Magnusson. Magnusson has presented a straightforward statement of facts in support of his motion for summary judgment which includes a history of a prior complaint about the prison's policy addressed by Magnuson and a narrative of how Magnusson approached Cookson's particular request. I now recommend that the court grant Magnusson's motion as to both personal and official capacity claims. Cookson has withdrawn his claim for monetary damages as against Magnusson and his claim for injunctive relief against Magnusson is moot. If Cookson seeks to pursue an official capacity claim against the new commissioner, seeking only prospective injunctive relief, and if the new commissioner is satisfied with the prior disposition of the third level grievance, entry of final

judgment could be delayed by a motion for substitution of parties in order to obtain a ruling on the merits in the context of the current summary judgment record.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citing National Amusement Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).

Just to give some backdrop on the factual footing of this action I set forth the following facts many of which are contested by Cookson.[1] Martin Magnusson was the Commissioner of the Maine Department of Corrections from May 1997 until February 2011. (SMF ¶1.) In this position, Magnusson generally oversaw the management and control of the correctional facilities, detention facilities and correctional programs in the state of Maine, including the Maine State Prison. (SMF ¶2.) In his position as Commissioner, pursuant to 34-A M.R.S.A. § 3048, Magnusson was mandated to adopt rules to accommodate prisoners in the state correctional facilities who expressed a wish to practice a particular religion, as long as the practice did not "present a threat to the safety, security or orderly management of the facility in which the prisoner [was] housed." (SMF ¶3.)

---

[1] Given the current posture of this litigation it is unnecessary to match tit-for-tat Magnusson's factual record to Cookson's response to the statement of fact and his 100-paragraph declaration. My recommended disposition does not turn on these factual disputes in light of the remedy requests posited by Cookson vis-à-vis Magnusson in either his personal or official capacity.

2

In accordance with this mandate, Magnusson adopted Policy Number 24.3, effective February 15, 2009, entitled, "Religious Services, General Guidelines." *(*SMF ¶ 4.) Pursuant to Policy Number 24.3, an inmate may request a religious practice not currently allowed within a facility by submitting a written letter to the Chaplain or other designee who would forward the request to the Chief Administrative Officer of the facility, or his or her designee, to make a decision. (SMF ¶ 5.) Policy Number 24.3 specifies that inmates will be provided the opportunity to participate in religious practices, "where feasible and not contrary to safety, security, or orderly management of the facility…." (SMF ¶ 6.) Policy Number 24.3 does not prohibit an inmate's belief in a particular faith, religion, or purported religion, nor does any other policy of the Department of Corrections. (SMF ¶ 7.) Magnusson additionally adopted Policy Number 21. 2, effective August 4, 2003, entitled "Prisoner Mail." (SMF ¶ 8.) Policy Number 21.2, Procedure E (2) (g) specifically prohibits, "[p]ublications and other materials . . . sent to prisoners . . . if they contain . . . material that promotes, hate, violence or bias." (SMF ¶ 7.) In July 2009, Magnusson received a third level grievance appeal from Cookson who was incarcerated at the Maine State Prison. (SMF ¶ 10.)

Cookson entered the Maine State Prison on September 25, 2000, and is currently an inmate there. (SMF ¶ 11.) As of July 17, 2009, Cookson had been a "devout Satanist for the past couple of years." (SMF ¶ 12.) As of April 11, 2009, Cookson, as a Satanist "had a daily practice for over 2 years" at the Maine State Prison. (SMF ¶ 13.)

On June 1, 2009, the plaintiff filed a grievance after his request for space in the Activities Building to practice Satanism was denied. (SMF ¶ 14.) Cookson was requesting that Satanism be recognized as a religion within the Maine State Prison in order to practice Satanic religious services. (SMF ¶ 15.) Cookson's first and second level grievance appeals were denied. (SMF ¶

3

16.) Magnusson handled the plaintiff's third level grievance appeal and reviewed the first and second level decisions denying Cookson's request to recognize Satanism at the Maine State Prison and denying his request for space to facilitate the religious practice of Satanism. (SMF ¶ 17.) From Magnusson's review of the grievance record, it appeared that Cookson was requesting space in the Activities Room in order to perform Satanic group religious services. (SMF ¶ 18.) Magnusson had previously dealt with this issue in a grievance filed by several inmates at the Maine State Prison requesting accommodations for the practice of Satanism in 2002. (SMF ¶ 19.) In addressing the plaintiff's case, Magnusson relied on his third level grievance decision in this previous case. (SMF ¶ 20.)

In reviewing whether to allow the group practice of Satanism at the prison in 2002, Magnusson consulted the Office of the Attorney General and investigated the nature of the practice of Satanism. (SMF ¶ 21.) In that case, the inmates submitted a proposal detailing some of the tenets and practices of Satanism which Magnusson reviewed. (SMF ¶ 22.) The proposal iterated "The Nine Satanic Statements" which included: "Satan represents vengeance, instead of turn the other cheek!"; and, "Satan represents all of the so-called sins, as they all lead to physical, mental, or emotional gratification!" (SMF ¶ 23.) The proposal also stated "The Eleven Satanic Rules of the Earth" which included: "If a guest in your lair annoys you, treat him cruelly and without mercy"; and "If someone bothers you, ask him to stop. If he does not stop, destroy him." (SMF ¶ 24.) In the course of his investigation of this grievance, Magnusson was also advised of portions of the primary text of Satanism, The Satanic Bible. (SMF ¶ 25.) Magnusson learned that portions of the text encouraged hate for your "adversary" to be shown by extreme violence; and also promoted gratification by the so-called deadly sins. (SMF ¶ 26.) Magnusson also became aware during his investigation that some Satanic rituals were specifically aimed at other

people. (SMF ¶ 27.) On September 27, 2002, after completing the investigation and upon advice of the Office of the Attorney General, which had reviewed legal precedent, Magnusson denied the inmates' request to practice Satanism at the Maine State Prison. (SMF ¶ 26.) The decision Magnusson made in the 2002 grievance was based solely on the determination that the practices and principles involved in Satanism created a risk to the safety and security of the prison. (SMF ¶ 27.) Specifically, Magnusson found the following:

> a. the principle of vengeance espoused by Satanism created a risk to safety and security in the prison;
> b. Satanic rituals aimed at other people could easily be used to prey on the vulnerable and therefore created a risk to safety and security in the prison;
> c. the encouragement of followers of Satanism to show hatred of adversaries through the use of extreme violence created a risk to safety and security in the prison; and
> d. Satanism created a risk to safety and security in the prison by promoting followers to seek gratification by all of the so-called deadly sins.

(SMF ¶ 28.)

For the same reasons, on September 1, 2009, Magnusson denied Cookson's request to practice Satanism at the prison as, "Satanic materials and the practice of Satanism are a threat to the safety, security, and the orderly management of the facility." (SMF ¶ 31.) Magnusson believed his decision was in accordance with federal law and the Department of Corrections' own policy and that he was justified in denying the plaintiff's grievance appeal. (SMF ¶ 32.) These facts are disputed by Cookson but, as explained below, it is not necessary to address these disputes at this juncture.

On the fifth page of his responsive memorandum in this lawsuit Cookson voluntarily withdraws all his claims under the Eighth Amendment and under the Constitution of the State of

Maine as well as any request for monetary relief. (Resp. Mem. at 5, Doc. No. 16.)[2] In his response to the defendant's first statement of fact, Cookson states that it is not clear as to when Magnusson last left his office and to what if any role he plays in the day to day operations or running of the Maine Department of Corrections. (Resp. SMF ¶1, Doc. No. 18.) "However," Cookson suggests, "under Rule 15 of the Federal Rules of Civil Procedure he can request the court to stop the proceedings so as to give the new commissioner an opportunity to address the plaintiff's complaint." (Id.) Cookson relies on the following five paragraphs of his declaration in support of this responsive statement:

> 94. Plaintiff acknowledges that Martin Magnusson is not the Commissioner of the MDOC at this present moment. However, the plaintiff believes that there is a dispute as to when the defendant left his office of commissioner and as to what role he currently plays in the day to day operations or running of the MDOC.
> 94. It is my considered opinion that either through a motion or by this Court's order or the defendant's permission, I could amend my complaint to replace Martin Magnusson with the current commissioner as the defendant in this action. This can be done under Rule 15, Federal Rules of Civil Procedure.
> 95. Again, it is my considered opinion, that another solution would be to resubmit my grievance directly to the new commissioner and wait for the outcome of this grievance before amending the complaint or proceeding with this lawsuit. Simply put, I am suggesting that I will voluntarily withdraw this lawsuit should the new commissioner agree to the following:
>     a. Recognize Satanism as a religion at MSP
>     b. To be allowed at MSP a scheduled time (a couple hours once a week) and place for group worship and studies for inmates practicing Satanism.
>     c. Be allowed a secure locker to store religious materials used for group worship and studies.
> 96. It should be noted that currently, recognized religious and secular groups at MSP have designated area and time for meetings and group worship. Also, at MSP, religious and secular groups are provided with a secure locker to store their items. Further, the ritual items I seek have all been approved for pagan and wiccan groups. Simply put, I am not asking for any special treatment or extra

---

[2] After this initial presentation nothing is very straightforward. Cookson, who is proceeding pro se has done a better job than many in responding to the defendant's statement of fact but his submissions fall far short of complying with District of Maine Local Rule 56. Most time consuming for the Court and the defendant is Cookson's decision to submit a 100-paragraph declaration in the stead of a statement of additional fact. The defendant objects to this nonconformity but has submitted a reply statement of fact to the declaration.

> benefits.
> 97. I acknowledge the fact that all mail and publications coming into MSP are reviewed by mail room staff or the media review officer to determine compliance with the Department Mail Policy, hence there is no mail or publication issues in this lawsuit.

(Cookson Decl. ¶¶ 93-97, Doc. No. 17 at 32-34.)

There is no indication in this factual record that the official policy of the Maine Department of Corrections has changed vis-à-vis the practice of Satanism since the change of leadership in the Department of Corrections.

By his response to the Magnusson's motion, Cookson generates an interesting twist in this litigation by withdrawing his request for monetary relief,[3] leaving only a claim against Magnusson for prospective injunctive relief. As Magnusson points out, Cookson's complaint does not make it clear whether or not he is suing Magnusson in his official or personal capacity or both. However, Cookson is expressly not challenging the policy governing the treatment of his request to practice his 'religion' but the application of that policy to Cookson. For instance, in Paragraph 61 of his declaration Cookson refers to his second level grievance: "I was very clear in stating that Satanism 'could be practiced in this facility <u>without violating any of the rules or guidelines of the Facility</u>- just like the other recognized religions here." (Cookson Decl. ¶ 61)(emphasis added). He faults Magnusson personally for relying on a third level grievance in a previous case to resolve Cookson's grievance. (<u>Id.</u> ¶ 65.) I could set forth many other examples of how Cookson faults Magnusson personally for the unfavorable resolution of his third level grievance.

---

[3] Cookson indicates that he originally sought monetary damages because he anticipated obtaining a lawyer and he wanted to assure that attorney fees were in the relief mix.

There is no question that Magnusson is entitled to judgment as to any individual capacity claims because Cookson has made it crystal clear that he is not seeking monetary damages and only wants prospective relief. It is not as clear as to whether Cookson's complaint states an official capacity claim against Magnusson, but to the extent that was his intent there is not a trial-worthy issue as to Magnusson as he is no longer the commissioner and has no authority to afford such relief.

If this were a facial challenge to the prison written policy it would be possible for Cookson to move forward with this complaint against the new commissioner to challenge the policy if he moved to substitute parties (which he has not done). However, Cookson has expressly stated that he is not challenging the policy but is challenging the manner in which it was discriminatorily applied to him by Magnusson during his grievance process. His suggestion that if the new commissioner responded to his request affirmatively he would drop the lawsuit further punctuates this view of the case.

I realize that the State has put a great deal of effort into preparing this motion for summary judgment and replying to Cookson's quixotic responsive pleadings. However, its record on the material issues is keyed to Magnusson's affidavit which includes his subjective reasoning for denying Cookson's third level grievance.[4] If this recommendation is adopted, the State will have succeeded in getting judgment on behalf of Magnusson because Cookson has renounced his claim for monetary relief and Magnusson is not able to provide any prospective relief. This case would be closed. However, judgment should enter without prejudice to any

---

[4] If this action was merely stayed so that Cookson could exhaust his administrative remedies through to the new commissioner the summary judgment record would have to be reopened. I am not advocating that course of action as a reasonable solution and if Cookson wants to proceed personally against the new commissioner, he will have to exhaust his grievances and launch a new case which, in turn, will have to develop its own summary judgment record.

future official or personal capacity claims against the new commissioner should Cookson choose to pursue further litigation because this case has not been decided on the merits.

I suppose that in response to this recommended decision Cookson could move to substitute official capacity defendants and the State could indicate through an affidavit that the current commissioner accepts Magnusson's grievance review as reflecting his <u>official</u> response to the earlier grievance, indicating that the matter was in order to proceed to resolution on its merits. Such a scenario could streamline the resolution of the issue of official capacity liability pertaining to prospective injunctive relief without the need to have either side face redundant litigation expense and elbow grease. Perchance there are other alternatives that could be framed by the parties.

## CONCLUSION

As explained above, I recommend that the Court grant judgment to Martin Magnusson both in his individual and official capacity. In order for both sides to have time to consider a way of moving forward short of judgment in this action and the prospect of an entirely new course of litigation, I am extending the objection and response deadlines from fourteen to twenty-eight days.[5] To be clear -- if this recommended decision is adopted without further movement by the parties or is affirmed over objections presented to this Court-- this case will be closed because judgment will enter in favor of Magnusson as to both his individual and official capacity liability. In that event any future claims against the new commissioner could be filed as there is nothing in this recommendation that adjudicates his personal or official capacity liability

---

[5] Cookson did pay his filing fee upfront. The burden of a new case would require that he assume the filing fee expense of that new case either upfront or through the <u>in forma pauperis</u> statute.

apropos Cookson's current claims that he apparently is pursuing through the prison grievance process.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within twenty-eight (28) days of being served with a copy thereof. A responsive memorandum shall be filed within twenty-eight (28) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 26, 2011